1  Robert Ahdoot (SBN 172098)
   rahdoot@ahdootwolfson.com
2  Tina Wolfson (SBN 174806)
   twolfson@ahdootwolfson.com
3  Theodore Maya (SBN 223242)
   tmaya@ahdootwolfson.com
4  **AHDOOT & WOLFSON, PC**
   2600 W. Olive Avenue, Suite 500
5  Burbank, California 91505
   Telephone: (310) 474-9111
6  Facsimile:  (310) 474-8585
7
   *Attorneys for Plaintiffs and the Putative Class*
8
   [Additional counsel appear on signature page]
9

10              **IN THE UNITED STATES DISTRICT COURT**

11            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12                       **SOUTHERN DIVISION**

13

| | |
|---|---|
| MICHAEL LE BEAU, PHILLIS LE BEAU, and DAVID GRIESEMER, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| KIA AMERICA, INC., | |
| Defendant. | |

Plaintiffs Michael Le Beau, Phillis Le Beau, and David Griesemer (collectively, "Plaintiffs"), by and through their attorneys, file this action on behalf of themselves and all others similarly situated against Defendant Kia America, Inc. ("Defendant" or "Kia"), and allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action individually, and on behalf of a nationwide class and classes for the states of Louisiana and South Carolina (more fully defined below), for the benefit and protection of purchasers and lessees of Kia's model year 2016 and 2017 Optima and 2017 Sportage vehicles (together, the "Vehicle(s)" or "Class Vehicle(s)").

2.     As alleged herein, the Class Vehicles are defective and unsafe. The Vehicles are equipped with a dangerous and defective power window system that results in power window regulator failure that causes the Vehicles' automatic windows to malfunction, function intermittently, or become non-operational. This poses a significant safety hazard to drivers and occupants of Class Vehicles.

3.     Window regulator failure presents a safety issue because windows protect against occupant ejection during a crash. Side windows are also critical to the proper operation of side airbags. Furthermore, an open window presents an emergency egress in the event of an accident or when drivers and passengers are otherwise unable to exit through vehicle doors, e.g., in the event of a crash that leaves the doors inoperable. When a Vehicle is parked in certain climates, inoperable windows can expose drivers and occupants to unsafe interior temperatures (exceeding 110 degrees Fahrenheit) that can impair the safe operation of the Vehicle. Inoperable open windows increase the risk of theft.

4.     The defect is the result of both the power window system being comprised of inadequate materials and improper workmanship in the production of the window system and window regulator such that normal operation of the

- 1 -

automatic windows causes the window regulator to break and otherwise fail (the "Defect").

5.      Kia has identified the root cause of the Defect, including through internal documents and reports addressing the window regulator failure in the Class Vehicles. The Defect results from a window regulator drum gear separating and/or breaking in the Vehicles.

6.      Kia is and has been well aware of the Defect. Consumers presenting Class Vehicles for a Defect-related repair are informed that Kia knows about the issue. Nevertheless, when owners and lessees of the Class Vehicles seek a repair for the Defect, they routinely are told there is no recall or fix, and they are forced to pay for this safety-related repair at their own expense. Obtaining an attempted repair for the Defect is not cheap. Class members report paying hundreds of dollars to obtain a repair for one window, and often are forced to pay for multiple window regulator failures at the same time or in close proximity.

7.      Prior to selling the Vehicles, Kia knew that the power window systems were defective, yet omitted and kept this material fact from Plaintiffs and other class members. Rigorous pre-release testing of the windows, including testing that replicates actual consumer use of the windows, made Kia aware of the Defect.

8.      Kia has also issued technical service bulletins ("TSB") that appear to be directly related to the Defect. The Defect is also widely discussed and complained about, including on message boards devoted to the Kia Optima and Kia Sportage and in complaints made directly to the National Highway Traffic Safety Administration (NHTSA), all of which Kia reviews and is aware of. Nevertheless, Kia has failed to recall the Vehicles, has not successfully remedied the Defect, has not made owners and lessees of the Class Vehicles whole, and has not made the Class Vehicles safe.

CLASS ACTION COMPLAINT

9.     The defective power window systems included in the Class Vehicles did not perform as warranted, and Kia omitted information about the Defect.

10.    As a result of Kia's misconduct, Plaintiffs and class members were each injured on account of receiving Vehicles that were fundamentally different from what they believed they were purchasing, and less valuable than was represented.

11.    In manufacturing, marketing, and selling and/or leasing these unsafe Vehicles, Kia has engaged in unfair, deceptive, and misleading consumer practices, and has breached warranties with the Vehicles' purchasers and lessees, including Plaintiffs.

12.    As a result of the Defect, Plaintiffs and class members are unable to utilize their Vehicles in a safe manner, and have incurred damages.

13.    The Defect presents a safety concern, and though numerous consumers have complained about it, Kia has failed to adequately address the Defect.

14.    Plaintiffs bring this action to obtain redress for those who have purchased or leased the Vehicles across the United States. Plaintiffs seek remedies for Kia's breaches of implied warranties, fraud, unjust enrichment, violations of state consumer protection laws, and seek declaratory and injunctive relief to prevent Kia's continued misconduct.

**JURISDICTION AND VENUE**

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, exclusive of interest and costs, the proposed classes have at least 100 members, and this is a class action in which certain of the class members (including Plaintiffs) and Defendant are citizens of different states.

16.    Venue is proper in this judicial District under 28 U.S.C. § 1391 because Kia is headquartered in this judicial District, Kia conducts significant business

CLASS ACTION COMPLAINT

throughout this District, and a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in, or emanated from, this District.

17. At all pertinent times, Kia was engaged in the marketing, advertisement, sale, and lease of the Class Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

### Plaintiffs Michael and Phillis Le Beau

18. Plaintiffs Michael and Phillis Le Beau are adult individuals who reside in and are citizens of Slidell, Louisiana. On or about March 28, 2016, the Le Beau Plaintiffs jointly purchased a new 2017 Kia Sportage at Lakeshore Kia, an authorized Kia dealership located in Slidell, Louisiana. The Le Beaus use the Class Vehicle for family and household use. Ms. Le Beau is the primary user of the Vehicle.

19. In or about mid-August 2021, the Le Beaus began experiencing the Defect, and their front passenger automatic window failed. The Le Beaus called Lakeshore Kia, and a service manager at the dealership told them to pull the window up with their hands and put shims into the window to hold it tight so the window would not fall until they could get an appointment with the dealership. The appointment was set for late September 2021, nearly 6 weeks after the window failed. Because they could not wait that long, the Le Beaus scheduled an appointment with All Star Kia in Denham Springs, Louisiana, another authorized dealership that was approximately 70 miles away. That appointment was set for August 12, 2021.

20. During the appointment with All Star, the technician had to order the parts for the repair, which All Star said was on backorder. The part came in August 25, 2021, and on the same day, the Le Beau's took their Vehicle back to All Star to get a repair. The repair cost was $551.89, which included parts and labor.

- 4 -
CLASS ACTION COMPLAINT

21.　On or about September 7, 2021, the front driver window failed due to the Defect. Plaintiffs put shims in the window this time as well, and because they never canceled their late September appointment at the Lakeshore Kia dealership, they presented their Vehicle to Lakeshore on September 28, 2021. During this appointment, Lakeshore had the parts for repair on hand, and was able to perform a repair. The Le Beaus again had to pay out of pocket for the repair, which cost them $560.98 inclusive of labor and costs.

22.　Then, in or about early November 2021, the Le Beau's Vehicle suffered the Defect again, when both backseat side windows failed. The Le Beau Plaintiffs made yet another appointment with Lakeshore Kia, and presented the Vehicle for a repair on November 9, 2021. Once again, the Le Beau's had to incur the cost of the window repairs, which was $826.54 to fix the two back windows. During this appointment, when Mr. Le Beau raised the fact that this issue has happened to all four windows within a few months, the service technician denied there was an issue and blamed the regional weather.

23.　In total, the Le Beau Plaintiffs have incurred nearly $2,000 out of pocket to pay for repairs relating to the window Defect in their Sportage.

24.　While Kia's dealership temporarily eliminated the Defect at the Le Beau Plaintiffs' cost, Kia has failed to permanently repair or otherwise correct the Defect in the vehicle in order to permit them to safely continue driving it without the risk of the power windows failing again.

25.　The Le Beau Plaintiffs anticipate that they will soon experience the window regulator Defect and resultant power window failure as they continue to use the Class Vehicle.

26.　The Le Beau Plaintiffs have sustained out of pocket damages, have lost time associated with getting the Vehicle repaired, and lost use of their Vehicle during the time it was being repaired, all as a result of the Defect.

- 5 -

CLASS ACTION COMPLAINT

27.    Because of the Defect, and Kia's inability or refusal to permanently remedy the issue, the Le Beaus continue to be exposed to a safety risk associated with window regulator failure in their Class Vehicle.

28.    At the time of purchasing the vehicle, the Le Beaus did not know that the Vehicle contains a Defect that causes power window failure, and that they would not be able to safely drive the vehicle without risk of the power windows failing. Had Kia disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to them purchasing the Class Vehicle, the Le Beau Plaintiffs would not have purchased the Vehicle, or would not have paid the purchase price that they did. Plaintiffs relied upon Kia to provide the full picture of information regarding their Vehicle, and relied upon the idea that Kia would not withhold material information about safety defects in the Vehicle, including the Defect. As a result, Plaintiffs received less than what they paid for their Vehicle and did not receive the benefit of their bargain.

**Plaintiff David Griesemer**

29.    Plaintiff David Griesemer is an adult individual who resides in and is a citizen of Summerville, South Carolina. In January 2016, Plaintiff Griesemer purchased a brand new 2016 Optima from Stokes Kia, an authorized Kia dealership located in Goose Creek, South Carolina. Plaintiff uses the Class Vehicle for family and household use, and he is the primary user of the Vehicle.

30.    In or about September 2021, Plaintiff began experiencing the Defect in his Optima. In a span of just over nine months—between on or about September 13, 2021 and June 29, 2022—all four windows (i.e., front and back driver and passenger side windows) experienced the Defect due to window regulator failure.

31.    Plaintiff presented his Vehicle for repair each time to Kia Country of Charleston located in Charleston, South Carolina. The total cost to repair the four windows was nearly $2,000, and Plaintiff was forced to pay approximately a $100

CLASS ACTION COMPLAINT

deductible for each window, forcing him to incur approximately $400 out of pocket for the repairs.

32.     While Kia's dealership temporarily eliminated the Defect in part at Plaintiff's cost, Kia has failed to permanently repair or otherwise correct the Defect in the Vehicle in order to permit him to safely continue driving it without the risk of the power windows failing again.

33.     Plaintiff anticipates that he will soon experience the window regulator Defect and resultant power window failure as he continues to use the Class Vehicle.

34.     Plaintiff has sustained out of pocket damages, has lost time associated with getting the Vehicle repaired, and lost use of his Vehicle during the time it was being repaired, all as a result of the Defect.

35.     Because of the Defect, and Kia's inability or refusal to permanently remedy the issue, Plaintiff continues to be exposed to a safety risk associated with window regulator failure in their Class Vehicle.

36.     At the time of purchasing the Vehicle, Plaintiff did not know that the Vehicle contains an unsafe Defect that causes power window failure, and that he would not be able to safely drive the Vehicle without risk of the power windows failing. Had Kia disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to them purchasing his Class Vehicle, Plaintiff would not have purchased the Vehicle, or would not have paid the purchase price that he did. Plaintiff relied upon Kia that it was providing the full picture of information regarding his Vehicle, and relied upon the idea that Kia would not withhold material information about safety defects in the Vehicle, including the Defect. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

CLASS ACTION COMPLAINT

1

**Defendant Kia America, Inc.**

2      37.    Defendant Kia America, Inc. is a California corporation, with its

3   corporate headquarters located at 111 Peters Canyon Road, Irvine, California,

4   92606. Kia markets, sells, and leases the Class Vehicles throughout the United

5   States, including in this District. Kia is responsible for sales, marketing, service,

6   distribution, import, and export of Kia-branded products, including vehicles and

7   parts, in California, and in the United States. Kia is also the warrantor and distributor

8   of Kia vehicles, including the Vehicles, in California and throughout the United

9   States. Kia has thousands of authorized dealerships across the United States—which

10  are its agents—and controls the distribution of automobiles, parts, services, and

11  warranty repairs Kia vehicles throughout the United States, all of which are under

12  Kia's control. Kia authorizes these distributors and dealerships to sell Kia vehicles,

13  parts, and accessories and to service and repair Kia vehicles using Kia parts. Kia

14  exerts control over its dealership-agents through the technical service bulletins

15  (TSBs) and other repair guidance it issues to its dealerships relating to problems

16  arising with Kia vehicles, including the Defect in the Vehicles, and instructing

17  dealerships how to perform repairs; Kia's warranty directs Vehicle owners and

18  lessees to present their Vehicles to Authorized Kia Dealers for repairs and service;

19  and Kia requires authorized dealerships to submit detailed data to it regarding repairs

20  performed at dealerships.

21      38.    Kia is a corporation organized and in existence under the laws of the

22  state of California and registered to do business in the State of California. Kia is

23  headquartered at 111 Peters Canyon Road Irvine, California, 92606.

24      39.    Kia does substantial business in California, with a significant portion

25  of the sales and leases made in California. In fact, a majority of its work in sales,

26  marketing, distribution, import, export, and warranty of Kia-branded products,

27  including vehicles and parts, takes place in California.

28

- 8 -
CLASS ACTION COMPLAINT

40.     California hosts a significant portion of Kia's U.S. operations, including sales and service offices and financial service offices, among others. Kia's research and design facilities are located in California.

41.     In addition, the conduct that forms the basis for each and every class member's claims against Defendant emanated from Kia's headquarters in California and is consistent with directives of Defendant's personnel in California.

42.     Kia's marketing and advertising personnel are located at its California headquarters, and the advertising and marketing schemes, as well as the Owner's Guides and Owner's Manuals describing the safety and performance of the Vehicles (which omitted to describe the Defect), were made and implemented from Kia's California headquarters.

43.     Kia's California personnel implemented its deceptive advertising scheme and other materials and have refused to repair the Defect in Plaintiffs' Vehicles.

44.     Defendant's personnel responsible for communicating with dealers regarding known problems with the defective Vehicles are also located at the California headquarters, and the decision to not inform authorized dealers of the Defect was made and implemented from Kia's California headquarters.

45.     Defendant has significant contacts with the state of California, and the conduct at issue herein emanated from California.

## **SUBSTANTIVE ALLEGATIONS**

46.     This action is brought against Defendant on behalf of Plaintiffs and all persons who purchased or leased Kia's model year 2016-2017 Optima and 2017 Sportage vehicles. The models and model years of vehicles comprising the Class Vehicles are subject to revision based upon information learned through the discovery process.

CLASS ACTION COMPLAINT

47.     Kia America, Inc. is the marketing and distribution arm of Kia Motors Corporation based in Seoul, Korea. Headquartered in Irvine, California, Kia touts itself as having "been the highest ranked mass market brand in initial quality for five consecutive years according to J.D. Power, and is recognized as one of the 100 Best Global Brands by Interbrand."[1] Kia "offers a complete range of vehicles sold through a network of nearly 800 dealers in the U.S."[2]

48.     In a press release published on Kia's website, www.kiamedia.com, Kia quotes its president Michael Cole as stating, "Kia is committed to building the safest vehicles possible" and that the six Top Safety Pick (TSP) ratings Kia recently received from the Insurance Institute for Highway Safety (IHS) reflect Kia's "commitment and reaffirms Kia's continued effort to strive for safety improvement and advancement in every model" it produces.[3]

49.     Kia sells Class Vehicles to its authorized distributors and dealerships, which, in turn, sell or lease those vehicles to consumers. After these dealerships sell cars to consumers, including Plaintiffs and members of the classes, they purchase additional inventory from Kia to replace the Vehicles sold and leased, increasing Kia's revenues. Thus, Plaintiffs' and class members' purchases of Vehicles accrue to the benefit of Kia by increasing its revenues.

### Overview of the Kia Optima

50.     The Kia Optima is a mid-size sedan that was initially introduced in 2000 as a 2001 model (first generation).

---

[1] KIA MEDIA, https://www.kiamedia.com/us/en/media/pressreleases/16009/kia-receives-six-top-safety-pick-ratings-from-insurance-institute-for-highway-safety (last visited Aug. 18, 2022).

[2] *Id.*

[3] *Id.*

CLASS ACTION COMPLAINT

51.     In 2016, the Optima entered its fourth generation, which according to Kia, "defie[d] the staid midsize sedan segment with its exquisite design, abundance of premium convenience features."[4] Kia quotes its vice president of product planning Orth Hedrick as stating, "[t]he all-new Optima encompasses everything the outgoing model did so well but does it even better. It has matured in all the right ways, from the European sport-sedan design to the premium materials to its improved ride and handling . . . The all-new Optima retains the signature personality of its predecessor, but we've literally improved everything, providing more space, better ergonomics, more technology and greater refinement."[5]

52.     In the press release, Kia's vice president, Orth Hedrick states: "Kia is known for superior design, quality engineering and intuitive technology. Kia continues to rack up the recognition from the auto industry . . . This latest honor from Kelley Blue Book reconfirms the Optima and Sportage as outstanding offerings in their segments and acknowledges Kia's world-class vehicle line-up."[6]

### *Overview of the Kia Sportage*

53.     The Kia Sportage is a compact SUV first built in 1995. Originally, it was a mini SUV developed with a Lotus engineering base platform, but the second generation Sportage has grown in size to become a compact crossover SUV.[7]

54.     The fourth generation Sportage was introduced for model year 2017. According to Kia: "The all-new 2017 Sportage, the fourth generation of Kia Motors America's longest-running nameplate, wraps a stunning and contemporary design

---

[4] KIA MEDIA, https://www.kiamedia.com/us/en/models/optima/2016 (last visited Aug. 18, 2022).

[5] *Id.*

[6] KIA MEDIA, https://www.kiamedia.com/us/en/media/pressreleases/12727/kia-optima-and-kia-sportage-ranked-top-10-most-awarded-vehicles-of-2017-by-kelley-blue-books-kbbcom (last visited Aug. 18, 2022).

[7] AUTOPEDIA WIKI, https://autopedia.fandom.com/wiki/Kia_Sportage

- 11 -

around a structure that is both stiffer and more spacious than ever before. Advanced driver assistance technologies, significant suspension and steering improvements, and available intelligent AWD vastly improve the Sportage's driving dynamics while premium materials and world-class craftsmanship create a class-up experience in an otherwise utilitarian segment."[8] Kia's vice president Orth Hedrick stated, "[i]nstead of bland utility, the Sportage combines distinctly European and sporty styling with thoughtful design and functionality, including innovative packaging, premium materials, a turbocharged engine and surprising features."[9]

### *The Defective Power Window Systems in the Optima and Sportage*

55.     The Class Vehicles are equipped with defective power window systems.[10] Each Vehicle has a power window switch that controls the door's window.[11]

56.     Due to a defect in materials and workmanship, the window regulator drum/gear are prone to separating and breaking, resulting in an inoperative window regulator and the malfunction of the power windows system. By nature, the Defect becomes increasingly severe over time.

57.     Window regulator failure in the Vehicles presents a severe safety issue for a number of reasons. First, automobile windows can protect against occupant ejection during a crash, yet when the Defect manifests in the Vehicles, class members are often left with non-functioning windows that have fallen down into the

---

[8] KIA MEDIA, https://www.kiamedia.com/us/en/models/sportage/2017 (last visited Aug. 18, 2022).

[9] *Id.*

[10] KIA, *Kia Sportage: Description and Operation,* https://www.kispmanual.com/description_and_operation-1087.html (last visited Aug. 18, 2022).

[11] KIA, https://www.ksportagegl.com/power_windows-110.htm.

CLASS ACTION COMPLAINT

car doors and cannot be "rolled up." Second, side windows are critical to the proper operation of side airbags. Third, being able to open a window, when needed, presents an emergency egress in the event of an accident or when drivers and passengers are otherwise unable to exit through vehicle doors, e.g., in the event of a crash that leaves the doors inoperable. For class members who have experienced the Defect in a way that prevents them from "rolling down" the windows in their Vehicles, they cannot use the windows as egress in the event of an emergency where the car doors become inoperable. Fourth, when a Vehicle is parked in certain climates, inoperable windows can expose drivers and occupants to unsafe interior temperatures (exceeding 110 degrees Fahrenheit) that can impair the safe operation of the Vehicle. Finally, inoperable open windows increase the risk of theft.

58.    Clearly, the Defect presents a safety concern, and though numerous consumers have complained about it, Kia has failed to adequately address the Defect.

59.    The internet is replete with complaints from Class Vehicle owners and lessees who, like Plaintiffs, have experienced the unsafe Defect and resultant malfunctioning power windows. Kia did not repair or otherwise correct the Defect in the Vehicles in order to permit Plaintiffs or class members to safely continue driving their Vehicles without risk of the window regulator being damaged or routinely failing and, as a result of the automatic windows becoming non-operational.

60.    Entire message board threads are devoted to complaints and discussion about the Defect. For example, on optimaforums.com, there is a discussion thread entitled "Power windows not working on 2016 Kia Optima," with numerous complaints and discussions about the Defect.[12] A sampling of the discussion is below (all sic):

---

[12] OPTIMA FORUMS, *Power windows not working on 2016 Kia Optima,*

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**J**

**Jim9858**
Registered 🇺🇸

Joined Feb 14, 2022
1 Posts

#44 · Feb 14, 2022 ⋮

I have 2016 Optima. Drivers window went out in Nov 2021. Motor was working but window would not go up or down. Due to Covid shortages had to buy last on from dealer and got hosed. When I took it apart to replace the regulator I found the drum gear that the motor interacts with was stripped out on the old regulator. I went ahead and replaced with new one and it works fine. Within a month the other three regulators went bad. Motor works But windows don't go up or down. I took to dealer as there is obviously a problem with the manufacture of the windows After speaking to Service manager I found out that it is a known problem with the drum gear in the regulators. While not issuing a recall, Kia did published a technical bulletin explaining the problem and detailing how to replace the drum gear. if your DYI replacing the regulator is really easy. Haven't tackled the drum gear replacement yet. Parts are limited supply and back ordered Currently holding windows up from inside with a suction cup on each window that you would use to lift tile or glass. bought at home depot while I figure out next step.



**Holly Katelyn**
Registered 🇺🇸

Joined Nov 2, 2021
1 Posts

#43 · Nov 2, 2021 ⋮

My back driver window stopped working in March, then my back passenger went less than a week later, got both of them fixed… fast forward to august, my front driver window went out, then lastly my front passenger window stopped working as well only a few short days later. I've had the parts ordered since august and supposedly they're still not in and it's now November. I find it strange that each of my windows stopped working within a week or less of each other. I think they should look into a recall

🔵 Ericglo

🖺 Save  ⸰⟨ Share

**K**

**karmirkle**
Registered 🇺🇸

Joined Oct 18, 2021
2 Posts

#40 · Oct 18, 2021 ⋮

I also have a 2016 Kia Optima and both of my back windows have gone out - I took it to Kia and unfortunaly my car was no longer under warranty - I did not have the money to fix them so they no longer work but one of my friends at work has a Kia Sportage and she has had to have all 4 of hers replaced under warranty and now she just told me today that one of them is out again.
I honestly belive it is a warranty issue - Kia needs to persue the issue immediately.

🖺 Save  ⸰⟨ Share



**Lynda**
Registered 🇺🇸

Joined Sep 9, 2021
2 Posts

#36 · Sep 9, 2021 ⋮

I am frustrated as well. I have a 2016 Kia Optima. Within a month I had three windows that went bad. I don't understand how three windows can go bad all at the same time. I had the driver window repaired and it was around $600 for one window. Both of my back windows have not been repaired yet. This is ridiculous. I am making a complaint directly to Kia regarding this issue. If anyone has any other suggestions I am open to them.

🖺 Save  ⸰⟨ Share

https://www.optimaforums.com/threads/power-windows-not-working-on-2016-kia-optima.171741/ (last visited Aug. 18, 2022).

- 14 -

CLASS ACTION COMPLAINT



**Gerryg**
Registered 🇺🇸
2016 Kia Optima

Joined Oct 28, 2017
8 Posts

#27 · Sep 4, 2020     ⋮

2016 Optima LX I have had to replace all 4 window regulators over the last year and a half. the same issue on all 4 units the teeth disintegrated in the small plastic gear which the motor mounts into. As the second owner of this vehicle I was only able to get one replaced under warranty before I passed 60,000 miles.

🔖 Save   ⤣ Share

---



**PJW**
Registered 🇺🇸

Joined Mar 17, 2021
2 Posts

#33 · Sep 5, 2021     ⋮

Let me set the record straight with these poorly designed Kia Window Regulators. No, it's not the master switch as each motor still works and makes the sound of it "wanting" to work. My wife has a 2016 Kia Optima LX (Florida) with 90K miles on it. In April, the rear passenger went out. Watched some videos, researched the method and for $250, that door was fixed. It's not hard at all, get the proper tools and you can do it. Fast forward to August 20, 2021. The front passenger window fails. On Sept 3rd, 2021 the rear passenger goes out and then TODAY, the Driver side WINDOW REGULATOR goes dead. The motor still hums likes its about to roll the window down, but nothin. Driver side window falls into the door panel, now I have to fish it out. The first one I replaced revealed wear in the plastic wheels . It's poorly and cheaply designed and any engineer that worked on this ought to be ashamed they put their name on this crappy design. It will cost us $1,000 just in parts to fix all of the windows. My Ford F-250 never had stuff like this happen to it's motorized windows. And it's a 2002 Ford F-250 with 218,000 miles on the meter.

---



**Whitney**
Registered 🇺🇸

Joined Aug 27, 2020
14 Posts

✅ Discussion Starter · #1 · Aug 27, 2020 (Edited)     ⋮

ORIGINAL: I have a 2016 Kia Optima with, as of now, roughly 58,000 miles on it and have had it for a little over three years. When the first window (rear passenger) stopped working, it was between Oct. 2019 and Nov. 2019. Luckily, the glass was up, but neither switches would allow it to go up and/or down. The motor did, however, make a noise as if it were trying to go up and/or down. At the time, I didn't have the money to comfortably spare in order to fix said window. I figured I'd save up and get it fixed in a few weeks. Then, as I'm getting enough saved to have the first window fixed, window number two (rear driver) gave out with the same issue. It would make a noise, but nothing. Fast forward to March 2020, COVID is getting big and we're in shut down, then out goes the third window (passenger side). I wasn't so lucky with this one because it was all the way down. Same as the first two, makes noise, just won't go up and/or down. A couple of weeks ago, my final working window called it quits. Has anyone else had the same experience and does it sound like there may be something faulty with wiring? To me it's rather odd that all gave out within less than a year. Should I chance taking it to a Kia dealership and paying out of pocket for all four to be fixed or try to file a complaint with NHTSA? (I know it isn't technically a safety issue, but an issue nonetheless.)

UPDATE: I took my car to my local Kia dealership to see if my car was covered under the 60K mile warranty, per someone's advice on here. (Thank you, by the way.) Seems that all four of my regulators have gone bad. The employee I spoke with verified that my car is covered under warranty still and that he hadn't seen anything happen like that before. After about 30 more minutes a different employee approached me telling me my car was ready to go. As she walked me out to the car she informed me that they've been seeing this issue a lot recently on optimas and sportages. She believes Kia needs to do a recall on the windows because there is definitely something faulty in there. Now, these two employees sit right next to each other in the same space. He told me he's not seen anything like this and she's saying it's been happening a lot lately. Needless to say, I'm not a huge fan of this dealership (big fat liars). Didn't leave there on a good note a year ago because of a lie, but at about 45 minutes away it's the closest to me. Just going to get my car fixed and washing my hands of that place. Anyway, thank you to all for your input! I really appreciate it!

**CLASS ACTION COMPLAINT**

61.    Another discussion thread on optimaforums.com entitled "Power windows" are similarly filled with numerous complaints and discussion about the Defect[13]:



**clockhart52**
Registered 🇺🇸
Joined Sep 26, 2021
3 Posts

Discussion Starter · #1 · Sep 26, 2021

I have a 2016 Kia Optima. My third window has went out in my Kia. I'm down to one working window with two taped up and the other one has fallen so I can't pull it up. When I tell you I am over Kia I mean it. My motor when out in 2020 and was replaced under warranty. My trunk Latch is broken and is taped up, which their is a recall for this but the Optimas are not covered. I'm a single mother and have never had as many problems with a car as I have had this one for it to be 5 years old. I had to put my car in the shop for it going into limp mode. This was covered due to recall but Kia offered no loaner car so I had to pay 1300 dollars for a rental to get me around for 21 days until they could look at my car due to the number of kia's they were working on. I will never purchase another Kia AGAIN and I Pray I can get into a safer car soon for me and my kids!



**KingFatty**
Registered 🇺🇸
2012 Black SX Prem. & Tech.
Joined May 1, 2013
2,591 Posts

#9 · Oct 14, 2021

Is there a good way to diagnose window issues, determine whether it's a switch or something behind the door panel?

My situation is the rear window, driver's side, doesn't go up or down.

The difficulty is the symptoms changed over time, and at first it seemed to be a simple switch failure, but now it seems like something else. Can a window go bad like described below, or could it be that multiple switches failed and also the window failed? How would I figure out which parts are good or bad?

At first the window worked fine using the rear controls located at that window, and using the master switches at the driver's seat, I could roll up the window but not down.

I thought the problem was just with the master switch at the driver's seat not being able to roll down that rear window. And sure enough, over time, the master switch gradually lost the ability to roll up the window too, while the rear seat at the window worked fine. Then over time, the rear seat couldn't do anything, and now that rear window is just stuck in place, closed, and no switch can make it move. So maybe the problem is not a switch at all, and it's just been a strange failure, or maybe it's both the switches and the window motor being the problem?

Anyway, for windows, how do I figure out what went wrong and what parts are still good, like a general troubleshooting approach?

---

[13] OPTIMA FORUMS, *Power Windows,*
https://www.optimaforums.com/threads/power-windows.173208/ (last visited Aug. 18, 2022).

CLASS ACTION COMPLAINT

62.     Another site called carcomplaints.com[14] contains numerous complaints about the Defect:

## 2016 KIA OPTIMA OWNER COMMENTS                    (PAGE 2 OF 2)

**#12**   **Optima EX**                                          MAR 25
          Automatic transmission    74,000 miles                 **2020**

REAR DRIVER'S DOOR WINDOW WON'T GO UP OR DOWN - Very strange and odd at first, I never have passengers. I barely even roll down the back windows - probably 30 times the whole time having my car, as the original owner starting at 7 miles on the odometer. I can hear the motor in the window, at first thought it was the switch and then discovered it was the window regulator after a few searches. Suggested part price $275 and that's without labor.

- **Howard K.**, Coral Springs, FL, US

**#11**   **Optima EX 2.4L 4L**                                  JAN 30
          Automatic transmission    87,000 miles                 **2020**

SO my drivers side window is the only window that works, ive never had a car where all but one window regulator goes out with in months of each other. i live in florida so my windows are usually always up considering the heat down here. no kids no pets. wtf kia?

- **Jennifer L.**, Lakeland, FL, US

**#10**   **Optima LX 2.4L**                                     MAR 17
          Automatic transmission    75,500 miles                 **2020**

Window #1 of that has had the regular break. Again, you have to replace the entire panel to solve the issue of the window falling down.

- **Norma R.**, West Palm Beach, US

**#9**    **Optima LX 2.4L**                                     AUG 04
          Automatic transmission    71,000 miles                 **2019**

Ok, so this is the fourth of 4 window regulators that has failed in the last 7 months. Each window's regulator had to be replaced. I replaced the part myself and is easy to do. It cost 250, but the only thing broken was a small 3 inch cog which would have cost a few bucks if they sold it separately to the entire plastic panel it attaches too. Total waste of plastic and time and money.

- **T J.**, Pompano Beach, FL, US

**#8**    **Optima LX 2.4L**                                     JUL 10
          Automatic transmission    70,000 miles                 **2019**

Ok, so this is the third of 4 window regulators that has failed. I replaced the part myself. It cost 250, but the only thing broken was a small 3 inch cog which would have cost a few bucks if they sold it separately to the entire plastic panel it attaches too. Total waste of plastic and time and money.

- **T J.**, Pompano Beach, FL, US

**#7**    **Optima LX 2.4L**                                     APR 10
          Automatic transmission    68,000 miles                 **2019**

Ok, so this is the second of 4 window regulators that has failed. I replaced the part myself. It cost 250, but the only thing broken was a small 3 inch cog which would have cost a few bucks if they sold it separately to the entire plastic panel it attaches too. Total waste of plastic, time and money. Very poor quality parts

- **T J.**, Pompano Beach, FL, US

---

[14] CARCOMPLAINTS.COM, *2016 Kia Optima Window Regulator Failure*, https://m.carcomplaints.com/Kia/Optima/2016/windows_windshield/window_regulator_failure.shtml (last visited Aug. 18, 2022).

CLASS ACTION COMPLAINT

#**6**   **Optima LX 2.4L**
Automatic transmission   65,000 miles

DEC 10
**2018**

This is the first of 4 window regulators that has failed. It failed just after my warranty was up and it I replaced the part myself. It cost 250, but the only thing broken was a small 3 inch cog which would have cost a few bucks if they sold it separately to the entire plastic panel it attaches too. Total waste of plastic and time and money.

- **T J.**, Pompano Beach, FL, US

#**5**   **Optima**
Automatic transmission   33,687 miles

MAY 25
**2019**

3 of my power windows are now not working. The rear passenger side wouldn't roll up about 5 months ago, then a few weeks ago the rear drivers side, and today the passenger side window. Each door and the driver door make the sound of trying to work up and down but the windows will not move. I had to hand pull the windows up and use suction cups or door stoppers until I can take it in. In watching some YouTube videos on the subject it looks like more than I can handle. These windows were in no way abused by kids playing around with them or any type of misuse, I am single, no kids and live in Florida where I barely roll my windows down and prefer using the A/C. I suppose it will be a matter of weeks before the drivers side door does the same. Is anyone else experiencing this?

**Update from Jul 25, 2019**

My car is going to the dealership tomorrow for 4 new regulators. The lady said you should of brought it in sooner, my reply was "yeah that would of been 4 separate appointments and 4 separate pains in my...." Anyway I am grateful the warranty covers it, but who is to say this won't just happen again.

- **Sherry P.**, Saint Petersburg, FL, US

#**4**   **Optima**
Automatic transmission   33,500 miles

OCT 01
**2018**

I'm now on window #3 of the mechanism not working. The dealer has replaced them but I've never heard of or experienced 3 window mechanisms going on 1 vehicle. I asked them to check the last one and supposedly they did.

- **Samantha K.**, Cape Coral, US

#**3**   **Optima**
Automatic transmission   33,000 miles

JUL 01
**2018**

This is now the second window mechanism that has stopped working on my vehicle.

- **Samantha K.**, Cape Coral, US

#**2**   **Optima**
Automatic transmission   32,000 miles

MAY 01
**2018**

Its very frustrating that the window mechanism stops working

- **Samantha K.**, Cape Coral, US

#**1**   **Optima**
Automatic transmission   34,000 miles

APR 01
**2019**

It is now all 4 window mechanisms have gone on my vehicle. I'm super pissed because the Dealer supposedly checked the last window mechanism to verify that it was working correctly.

- **Samantha K.**, Cape Coral, US

63.    The following are some examples of complaints from owners and lessees of the Vehicles concerning the Defect available through NHTSA's website[15]:

---

[15] *See, e.g.,* NHTSA, *2016 Kia Optima Safety Ratings,*

- 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**June 27, 2022** NHTSA ID NUMBER: 11471121

## Components: VISIBILITY



**NHTSA ID Number:** 11471121

**Incident Date** June 1, 2022

**Consumer Location** MONTGOMERY, AL

**Vehicle Identification Number** 5XXGT4L37GG****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

All 4 windows in my car has dropped down and won't go back up. Have to put a car cover over it to keep it from raining in it or to keep anything else out of it. I rarely rolled my windows down in this car every since I have purchased it and all of a sudden all the windows just drops down. This is a defect on the company part and not mine and i want to find out why I never received a recall letter to this effect for I have seen and read that there were cars recalled for the same problem that I am having with mine.

**January 3, 2022** NHTSA ID NUMBER: 11446056

## Components: VISIBILITY

**NHTSA ID Number:** 11446056

**Incident Date** December 13, 2021

**Consumer Location** FORT VALLEY, GA

**Vehicle Identification Number** 5XXGT4L16GG****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

The contact's grandmother owns a 2016 Kia Optima. The contact stated that while driving at 25 MPH, the rear driver's side window inadvertently fell. There were no warning lights illuminated. The contact veered to the side of the road and pulled up the window manually. She then inserted a piece of paper in the upper right corner of the window to keep it in place. The contact stated that the failure reoccurred while driving. The front and rear driver's side windows and the rear passenger's side window also inadvertently fell. The contact inserted pieces of paper in the upper right corner of each window. The vehicle was taken to the dealer but was not diagnosed. The dealer informed the contact that the vehicle would be repaired at her expense. The manufacturer was notified of the failure but did not provide any assistance. The vehicle was not repaired. The failure mileage was approximately 83,500.

---

https://www.nhtsa.gov/vehicle/2016/KIA/OPTIMA;

NHTSA, *2017 Kia Sportage Safety Ratings,*
https://www.nhtsa.gov/vehicle/2017/KIA/SPORTAGE/SUV/FWD (last visited
Aug. 18, 2022).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**September 20, 2021** NHTSA ID NUMBER: 11433589
## Components: VISIBILITY



**NHTSA ID Number:** 11433589

**Incident Date** September 17, 2021

**Consumer Location** NASHVILLE, TN

**Vehicle Identification Number** 5XXGT4L35GG****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

Without heavy use (I don't often have passengers in the back seat), driver side rear window regulator/motor failed in May, causing the rear window to fall into the door while driving. This is a major safety issue as anything can go through the car - rain or debris. It was roughly $600. This weekend, the same thing happened to another window out of the blue while having my dog in the back who nearly jumped out after it fell into the door. Now, the part is backordered and the Kia dealership has said it could be months before the window can be repaired and they offer no solution on how to keep the window up in the meantime. This is an expensive safety issue and should not be failing in multiple windows. My car only has 65k miles on it.

**August 28, 2020** NHTSA ID NUMBER: 11351833
## Components: ELECTRICAL SYSTEM, VISIBILITY

**NHTSA ID Number:** 11351833

**Incident Date** June 13, 2019

**Consumer Location** MIRAMAR, FL

**Vehicle Identification Number** 5XXGU4L3XGG****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

TL* THE CONTACT OWNS A 2016 KIA OPTIMA. THE CONTACT STATED WHILE DRIVING 60 MPH, THE DRIVER'S AND PASSENGER'S SIDE REAR WINDOWS STARTED TO ROLL DOWN INDEPENDENTLY. THE CONTACT WAS UNABLE TO ROLL THE WINDOWS BACK UP. THE VEHICLE WAS TAKEN TO LOCAL DEALER RICK CASE KIA LOCATED 14500 W. SUNRISE BLVD, SUNRISE, FL 33323, (954) 715-7580, WHERE IT WAS DIAGNOSED WITH NEEDING THE WINDOW REGULATORS TO BE REPLACED. THE VEHICLE HAD BEEN REPAIRED BUT CONTINUED TO EXPERIENCE THE FAILURE. THE MANUFACTURER HAD NOT BEEN INFORMED OF FAILURE. THE FAILURE MILEAGE WAS 37,222.

CLASS ACTION COMPLAINT

February 19, 2021 NHTSA ID NUMBER: 11396979

## Components: VISIBILITY/WIPER



**NHTSA ID Number:** 11396979

**Incident Date** February 19, 2021

**Consumer Location** OVIEDO, FL

**Vehicle Identification Number** 5XXGT4L33GG****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | THE RIGHT REAR WINDOW SUDDENLY ROLLED DOWN WHILE DRIVING. CHECKS REVEAL THAT THE MOTOR THAT CONTROLS THE UPWARD/DOWNWARD MOVEMENT WAS INOPERABLE. I TOOK IT TO THE DEALER AND THEY CONFIRM THE MOTOR NEEDED CHANGING. I EXPLAINED TO THEM THAT I AM THE ONLY USER OF THE CAR AND THE BACK SEAT HAS NEVER BEEN USED, THEY STILL CHARGED $650 TO REPLACE THE MOTOR. SIX MONTHS LATER THE SAME THING HAPPENED TO THE REAR LEFT WINDOW. I AM NOT IN A POSITION TO PAY ANOTHER $650, SO I TRIED TO PLACE PAPER IN THE SPACE TO HOLD THE GLASS IN PLACE. NOW TODAY THE RIGHT FRONT GLASS JUST ROLLED DOWN WHILE DRIVING. I SPOKE WITH A KIA DRIVER I SAW IN THE PARKING LOT AT WALMART AND HE STATED THAT HE HAD SIMILAR PROBLEMS. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

December 9, 2019 NHTSA ID NUMBER: 11287902

## Components: ELECTRICAL SYSTEM, VISIBILITY/WIPER



**NHTSA ID Number:** 11287902

**Incident Date** August 13, 2019

**Consumer Location** BOYNTON BEACH, FL

**Vehicle Identification Number** 5XXGT4L37GG****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | TL* THE CONTACT OWNS A 2016 KIA OPTIMA. THE CONTACT STATED THAT ALL FOUR WINDOW REGULATORS FAILED. THE CONTACT WAS UNABLE TO GET THE WINDOWS TO MOVE UPWARD AND CLOSE. THE CONTACT TOOK THE VEHICLE TO KIA DELRAY (LOCATED AT 2255 S FEDERAL HWY, DELRAY BEACH, FL 33483, 561-637-5500) WHO STATED THAT THE WINDOW REGULATORS FAILED FOR ALL FOUR WINDOWS AND NEEDED TO BE REPLACED. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND PROVIDED AUTHORIZATION TO REPAIR THE REAR WINDOWS. THE MANUFACTURER WAS CONTACTED AND PROVIDED CASE NUMBER: 13306734. THE APPROXIMATE FAILURE MILEAGE WAS 72,000. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

CLASS ACTION COMPLAINT

**July 22, 2022** NHTSA ID NUMBER: 11475325

## Components: UNKNOWN OR OTHER

**NHTSA ID Number:** 11475325

**Incident Date** July 22, 2020

**Consumer Location** PUNTA GORDA, FL

**Vehicle Identification Number** KNDPN3ACXH7****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

On 7/22/2020 I brought my Sportage to Fuccillo Associats of Florida Inc. 202 Tamiami Trail, Port Charlotte Fl. 33953. At that time they took it upon themselves to change a window regulator drum gear on the driver's side. This was covered under warranty, even though the warranty was expired already. Part number 82473-D3000FFF. Then on 11/16/2021 the second regulator drum gear failed in the rear passenger behind drivers seat. The window fell and could not be closed. This was repaired at my expense at $458.00 at 75,000 miles. Now as of July 1st the third window regulator drum gear failed on the passenger rear side. Now the window is inoperable and falls down. I alerted Kia to this issue and they attempted to change me a diagnostic fee and a $450 replacement fee in a part they know is defective and has been a problem for them all across the country. Look on your own site and you will see many many complaints of windows that just fell and the window regulator will not bring the window back up. This window drum gear is defective and should nave been part of a national recall on all 4 windows as they were probably manufactured out of material that would not stand up to normal wear and tear.

CLASS ACTION COMPLAINT

64.    Kia has issued at least two TSBs related to the Defect under the following TSB numbers:

- BOD300[16]
- SA418

65.    Despite issuing the foregoing TSBs—a tacit recognition of the Defect in and of itself—Kia has not issued a recall relating to the Defect.

### *Kia Knew the Power Window Systems in the Vehicles are Defective*

66.    At the same time Kia was selling the Class Vehicles to Plaintiffs and the car-buying public, Kia was well aware of the problems with Class Vehicles' power window systems, both from the internal validation and testing that Kia performed and from its past experience and expertise.

67.    Kia requires that each component is tested for durability before mass production. Kia employs several teams of engineers whose work is focused on testing the durability of the power window systems, including testing on the completed vehicle, bench testing, and simulation testing, exterior performance test engineers, electrical validation test technicians, and reliability test engineers responsible for guaranteeing full vehicle and component performance for durability requirements.

68.    As part of Kia's pre-sale testing, it performs open and close tests on the windows in its vehicles over thousands of cycles. These open/close tests replicate the actual use of the windows in the Class Vehicles and would have revealed to Kia that the Vehicles contain defective window regulators that, when they fail, cause the windows in the Vehicles to function intermittently or become inoperable.

69.    Federal regulations require automobile manufacturers to build vehicles that comply with the Federal Motor Vehicle Safety Standards (49 C.F.R. § 571). The

---

[16] NHTSA, *Kia Technical Service Bulletin* (March 2021), https://static.nhtsa.gov/odi/tsbs/2021/MC-10189544-0001.pdf.

CLASS ACTION COMPLAINT

existence of these standards necessarily requires Kia to extensively test its vehicles prior to selling them. During the course of these and other quality validation testing conducted by its engineers prior to their sale, Kia became aware of the defective power window systems.

70.    Kia was also aware of the Defect based upon the raft of negative consumer responses and reactions about the Class Vehicles, which in addition to its pre-sale testing supports an inference of knowledge—yet it continued to sell and lease the Vehicles with the Defect.

71.    Kia closely reviews Kia and Kia-related automobile message boards, consumer websites, complaints on the NHTSA website, and other websites and sources relating to its vehicles and defects, complaints, or other issues pertaining to the Kia's vehicles, including the Class Vehicles. It specifically pays considerable attention to electrical and technological issues in its automobiles, as properly functioning electrical systems are necessary to ensure that critical safety features are operable.

72.    Kia specifically monitors customers' complaints made to NHTSA. Federal law requires automakers like Kia to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

73.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of its ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Kia knew or should have known of the complaints about the Defect logged by NHTSA Office of

- 24 -

Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Kia to the Defect.

74.     Kia had knowledge, or should have known, about the Defect from all of these sources, yet it issued a series of TSBs that did nothing to remedy the Defect; continued to sell Class Vehicles with a well-known safety issue; declined to issue a recall despite the prevalence of the issue; and has sat on its hands as Kia dealerships routinely charge class members large sums of money when they present their Vehicles for repair of the Defect after it inevitably manifests.

75.     Kia had knowledge that its omissions regarding the safety and performance of the Vehicle were misleading, yet it continued to make the same omissions regarding the Vehicles to Plaintiffs and members of the proposed classes, despite the fact that Kia knew that the Vehicles were defective.

76.     To date, Kia has failed to remedy the Defect and continued to sell the Class Vehicles despite its knowledge of the Defect.

77.     To date, Kia has not demonstrated that it is capable of providing an adequate repair for the Defect, and Plaintiffs and class members do not know whether Kia is capable of providing a repair for the Defect. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiffs and members of the class. As a result, Plaintiffs, at this stage of the litigation, seek both restitution and a remedy at law, where the claims so permit. Further, Plaintiffs seek an injunction enjoining Kia and its agents, servants, and employees, and all persons acting under, in concert with, or for it from selling or leasing Class Vehicles without notice that they are subject to the Defect, which cannot be repaired, and that this remains the situation.

**THE LIMITED REMEDIES' FAILURE OF THEIR ESSENTIAL PURPOSE**

78.     Given the inherently defective nature of the Vehicles and their propensity to malfunction (or continue to malfunction) and require repair, and given Kia's inability to repair the Defect and its non-disclosure and affirmative concealment of these facts, enforcement of the unilaterally imposed durational and damage limits of the express warranty would so oppress and surprise the Plaintiffs and class members as to render these durational and damage limits unconscionable and hence unenforceable.

79.     Under the applicable warranty, Plaintiffs and class members are entitled to the repair and replacement of defective parts. However, because the Defect persists after any repairs and replacements authorized by Defendant are made, and because Defendant knew that these actions were insufficient to cure the Defect, Plaintiffs and class members are left without any remedy under a warranty to correct the Defect. Indeed, Defendant has had numerous opportunities to correct the Defect but has failed to do so.

80.     When class members present their Vehicles for a Defect-related repair, Kia is unable to remedy the Defect. Continued presentment of Vehicles by Plaintiffs and class members to Kia in hopes of a repair or remedy would thus be futile. Simply put, Defendant's express warranty fails its essential purpose, so that class members are without the benefit of their primary bargain—reliable and operational Vehicles that are safe and free of material defects.

81.     The warranty service provided at Kia's dealerships and Kia's other agents' facilities failed to fix the problems with the Vehicles. As a result of Defendant's failure to properly or adequately repair the Defect, Plaintiffs suffered direct, and reasonably foreseeable, incidental damages and did not have the benefit of a safe and reliable Vehicle.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

82.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the class were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Defendant's deception with respect to the Defect.

83.     Plaintiffs and class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendant was concealing a defect and/or the Class Vehicles contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiffs and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Class could not have discovered—through the exercise of reasonable diligence—the existence of the Defect or that the Defendant was concealing the Defect.

84.     At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and class members the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Defect in Class Vehicles.

85.     Defendant knowingly, actively, and affirmatively concealed the facts alleged herein, and the Defect. Plaintiffs and class members reasonably relied on Defendant's knowing, active, and affirmative concealment.

86.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations.

## **CLASS ACTION ALLEGATIONS**

87.    Plaintiffs, individually and as a class action on behalf of similarly situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3), seek to represent the following class:

> **Nationwide Class**
> All owners and lessees of Kia's model year 2016 or 2017 Optima or 2017 Sportage automobiles purchased or leased in the United States and its territories

88.    Plaintiffs also bring this action in the alternative on behalf of the following state classes:

> **Louisiana Class**
> All owners and lessees of Kia's model year 2016 or 2017 Optima or 2017 Sportage automobiles purchased or leased in the state of Louisiana.

> **South Carolina Class**
> All owners and lessees of Kia's model year 2016 or 2017 Optima or 2017 Sportage automobiles purchased or leased in the state of South Carolina.

89.    Excluded from these classes are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned. Plaintiffs reserve the right to amend the definition of the classes if discovery and/or further investigation reveal that the classes should be expanded or otherwise modified.

90.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

91.    **Numerosity:** The members of the Class are so numerous that joinder of all class members in a single proceeding would be impracticable. While the exact number and identities of individual members of the class is unknown at this time,

CLASS ACTION COMPLAINT

such information being in the sole possession of Kia and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege that over a hundred thousand Vehicles have been sold and leased in the United States.

92.   **Existence/Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Such common questions of law or fact include, *inter alia*:

        a.     whether Kia engaged in the conduct alleged herein;

        b.     whether Kia omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

        c.     whether Kia's omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

        d.     whether Kia breached warranties with Plaintiffs and the other class members—including the implied warranty of merchantability—when it produced, distributed, and sold the Class Vehicles;

        e.     whether Plaintiffs' and other class members' Vehicles were worth less than as represented as a result of the Defect and conduct alleged herein;

        f.     whether Plaintiffs and the other class members have been damaged and, if so, the extent of such damages; and

        g.     whether Plaintiff and the other class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

93.   Kia engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members. Similar or identical statutory and common law violations, business

practices, and injuries are involved. Individual questions, if any, are substantially overcome, in both quality and quantity, by the numerous common questions that dominate this action.

94.   **Typicality:** Plaintiffs' claims are typical of the claims of the other class members because, among other things, Plaintiffs and the other class members were injured through the substantially uniform misconduct described above. As with Plaintiffs, class members also purchased or leased a Class Vehicle containing the Defect. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other class members, and no defense is available to Kia that is unique to Plaintiffs. The same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all class members. Plaintiffs and all class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Kia's wrongful conduct in selling/leasing and failing to remedy the Class Vehicles.

95.   **Adequacy:** Plaintiffs are adequate class representatives because they will fairly represent the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the class they seek to represent and have the resources to do so. Plaintiffs nor their counsel have any interest adverse or antagonistic to those of the class.

96.   **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Kia, so it would be impracticable for class members to

individually seek redress for Kia's wrongful conduct. Even if class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents no significant management difficulties, if any, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

97.    Defendant has acted and refused to act on grounds generally applicable to the Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

98.    Upon information and belief, class members can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Kia maintains regarding its sales and leases of Class Vehicles.

99.    Unless the classes are certified, Defendant will improperly retain monies that they received from Plaintiffs and members of the classes as a result of its conduct. Unless Defendant is required to change its conduct, it will continue to commit the violations and acts alleged herein and the members of the class and the general public will continue to be misled and harmed.

## CAUSES OF ACTION
### COUNT I
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class or, in the alternative, the State Classes)**

100.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

101.    Plaintiffs Michael and Phillis Le Beau, and David Griesemer bring this claim on behalf of the Nationwide Class or, in the alternative, under the laws of their respective home states, under Louisiana and South Carolina law.

- 31 -

102.   Defendant is and was at all relevant times a merchant with respect to the Vehicles, and manufactured, distributed, warranted and sold the Vehicles.

103.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold is implied by law.

104.   Plaintiffs and the other class members purchased the Vehicles manufactured and sold by Defendant in consumer transactions.

105.   The Vehicles, when sold and at all times thereafter, were not in merchantable condition and the automatic windows were not in merchantable condition and were not fit for the ordinary purpose for which cars are used. The Vehicles left Defendant's possession and control with defective power window systems that rendered them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to safety.

106.   Defendant knew before the time of sale to Plaintiffs and the other class members, or earlier, that the Vehicles were produced with defective power window systems that was unfit for ordinary use, that rendered the Vehicles unfit for their ordinary purposes, and that posed a serious safety threat to drivers, passengers, and everyone else sharing the road with the Vehicles. This knowledge was based on Defendant's own industry standard internal validation of its vehicles prior to launching new models, internal testing, knowledge about and familiarity with the power window systems included in the Vehicles, history of similar problems with similar automatic windows malfunctioning or failing in prior models, and complaints by consumers and third parties.

107.   The existence and ubiquity of the Defect is illustrated by the numerous publicized consumer complaints, disputes, and failed remedial measures nationwide.

108.   Despite Plaintiffs' and the other class members' normal, ordinary, and intended uses, maintenance, and upkeep, the power window systems of the Vehicles experienced and continue to experience the Defect and premature failure.

109.   The power window systems in the Vehicles and the Vehicles themselves are, and at all times and were, not of fair or average quality, and would not pass without objection.

110.   All conditions precedent have occurred or been performed.

111.   Plaintiffs and class members have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under Kia's warranty, including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

112.   Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

113.   In addition, upon information and belief, Defendant received numerous complaints, notices of the need for repair and resulting safety issues, and requests for warranty repairs and coverage relating to the Defect from other members of the class.

114.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendant knew about prior to offering the Vehicles for sale and/or lease, and which Defendant did not disclose and did not remedy prior to (or after) sale and/or lease, is unconscionable, and Defendant should be estopped from pursuing such defenses.

115.   Further, any such effort by Defendant to disclaim or otherwise limit liability for the Defect is null and void because Kia and its authorized agents (the dealers) have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the powertrain.

116.   Specifically, Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first made these warranties and their limitations that the defect existed, and the warranties might expire before a reasonable consumer would notice or observe the defect. Defendant also failed to take necessary actions to adequately disclose or cure the Defect after the existence of the Defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the Defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the Defect or cure its breaches of warranty.

117.   As such, Defendant should be estopped from disclaiming liability for its actions.

118.   Privity of contract is not required for consumer implied warranty claims under the relevant laws. However, Plaintiffs and the other class members had sufficient direct dealings with Defendant and its agents (dealers) to establish privity of contract.

119.   Kia's authorized dealers are agents of Kia, and there is a factually plausible agency relationship between Kia and its dealerships. This agency is factually supported by at least the following: 1) Kia issued a series of TSBs to its dealerships relating to the window regulator at issue in this litigation; 2) Kia's warranty directs Class Vehicle owners to present their vehicles to Kia authorized dealerships for repairs; and 3) Kia requires dealerships to submit detailed data to it regarding repairs performed at dealerships. These considerations demonstrate the agency relationship between Kia and its dealerships, with whom Plaintiffs interacted and transacted as alleged herein.

CLASS ACTION COMPLAINT

120.   Privity is also not required in this case because Plaintiffs and the other class members are intended third-party beneficiaries of contracts between Defendant and its dealers (i.e., its agents); specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiffs and the other class members. Privity is also not required because Plaintiffs' and the other class members' Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

121.   Plaintiffs and the other class members suffered and will suffer diminution in the value of their Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

**COUNT II**

**Fraud/Fraudulent Omission**
**(On Behalf of the Nationwide Class or, in the alternative, the State Classes)**

122.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

123.   Plaintiffs bring this claim on behalf of the Nationwide Class or, in the alternative, the state classes under the laws of Plaintiffs' respective home states, under Louisiana and South Carolina law.

124.  Defendant actively, intentionally, and knowingly concealed, suppressed, and/or omitted material facts including the existence of the Defect and the standard, quality, or grade of the Vehicles and the fact that the Vehicles contain a Defect and corresponding safety risk, with the intent that Plaintiffs and class rely

CLASS ACTION COMPLAINT

on Defendant's omissions. As a direct result of the Defendant's fraudulent conduct, as alleged herein, Plaintiffs and members of the class have suffered actual damages.

125.   Defendant knew at the time of sale or lease and thereafter that the Vehicles contained the Defect, omitted material information about the safety of the Vehicles, and actively concealed the Defect and never intended to adequately repair the Defect during the warranty periods. To date, Defendant has not provided Plaintiffs and members of the class with an adequate repair or remedy for the Defect.

126.   Defendant possessed superior and exclusive knowledge regarding the Defect, and therefore had a duty to disclose any information relating to the safety and functionality of key safety features in the Vehicles.

127.   The Defect is material to Plaintiffs and the members of the class because Plaintiffs and the members of the class had a reasonable expectation that the Vehicles would not contain a Defect that prevents them from properly using their automatic windows and that exposes them and others to a safety risk. No reasonable consumer expects a vehicle to contain a concealed Defect in materials or workmanship, such as the Defect as well as its associated safety risk.

128.   Plaintiffs and members of the class would not have purchased or leased the Vehicles but for Defendant's omissions and concealment of material facts regarding the nature and quality of the Vehicles and the existence of the Defect and corresponding safety risk, or would have paid less for the Vehicles.

129.   Kia knew its concealment and suppression of the Defect was false and misleading and knew the effect of concealing those material facts. Kia knew its misstatements, concealment, and suppression of the Defect would sell more Vehicles and would discourage Plaintiffs and the members of the Class from seeking replacement or repair of the Defect during the applicable warranty periods. Further, Defendant intended to induce Plaintiffs and class members into purchasing or

CLASS ACTION COMPLAINT

leasing the Vehicles and to discourage them from seeking replacement or repair of the Defect in order to decrease costs and increase profits.

130.   Defendant acted with malice, oppression and fraud.

131.   Plaintiffs and the members of the Class reasonably relied upon Defendant's knowing misrepresentations, concealment and omissions. As a direct and proximate result of Defendant's misrepresentations, omissions and active concealment of material facts regarding the Defect and the associated safety risk, Plaintiffs and the members of the Class have suffered actual damages in an amount to be determined at trial.

**COUNT III**

**Unjust Enrichment**

**(On Behalf of the Nationwide Class, or in the alternative, the State Classes)**

132.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

133.   Plaintiffs bring this claim on behalf of the Nationwide Class or, in the alternative, the state classes under the laws of Plaintiffs' respective home states, under Louisiana and South Carolina law.

134.   This claim is pleaded in the alternative to the other claims herein, and seeks restitution of ill-gotten gains.

135.   As a direct and proximate result of Kia's omissions concerning and its failure to disclose the known Defect, Kia has profited through the sale and lease of the Vehicles and subsequently by profiting on the purchase of replacement parts and charging Plaintiffs and other Class Members for expensive repairs to their Vehicles when the window regulators inevitably fail. Although these Vehicles are purchased through Kia's agents, the money from the Vehicle sales flows directly back to Kia.

136.   As a result of its wrongful acts, concealments, and omissions of the Defect in its Vehicles, as set forth above, Kia charged higher price for the Vehicles

- 37 -

CLASS ACTION COMPLAINT

than the Vehicles' true value. Plaintiffs and members of the class paid that higher price for their Vehicles to Kia's authorized distributors and dealers, which are in Kia's control.

137.   Additionally, as a direct and proximate result of Kia's failure to disclose known Defect in the Vehicles, Plaintiffs and class members have Vehicles that will require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Kia.

138.   Kia has been unjustly enriched due to the known Defect in the Vehicles through the receipt and use of money paid for the defective vehicles, sale of replacement parts, and performance of window regulator repairs, that added to Kia's profits when said money should have remained with Plaintiffs and the class members.

139.   As a result of Kia's unjust enrichment, Plaintiffs and the class members have suffered damages.

140.   Equity and good conscience militate against allowing Kia to retain its ill-gotten gains, and requires disgorgement and restitution of the same.

**COUNT IV**
**Violations of Louisiana Unfair Trade Practices and Consumer Protection Law**
**La. Rev. Stat. Ann. §§ 51:1401, *et seq.***
**(On Behalf of Plaintiffs Michael and Phillis Le Beau and the Louisiana Class)**

141.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

142.   Plaintiffs Michael and Phillis Le Beau bring this claim on behalf of the Louisiana Class under Louisiana law.

143.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A). Unfair acts

CLASS ACTION COMPLAINT

are those that offend established public policy, while deceptive acts are practices that amount to fraud, deceit, or misrepresentation.

144.   Kia, Plaintiffs, and Louisiana Class members are "persons" within the meaning of the La. Rev. Stat. Ann. § 51:1402(8).

145.   Kia engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(10).

146.   Plaintiffs and other Class members are consumers who purchased or leased a Vehicle for end use and not for resale.

147.   Kia's conduct, as described above, in misrepresenting the Vehicles' features, while omitting the facts that Vehicles contained defective power window systems, constitutes an unfair and deceptive practice and was likely to mislead a reasonable consumer.

148.   A reasonable consumer would consider the quality of the power window systems in a Vehicle, and defective nature of the automatic windows, to be important when making a decision whether to purchase or lease a Vehicle. The disclosure of the defective power window systems would have influenced prospective buyers not to enter into transactions.

149.   Kia knew before the time of sale to Plaintiffs and the other class members, or earlier, that Vehicles were produced with defective power window systems that posed a serious safety threat to drivers and passengers. Through knowledge of manufacture and production of the power window systems, internal product testing, consumer complaints, and past experience, Defendant learned of the Defect. The existence and ubiquity of the Defect is illustrated by the numerous publicized consumer complaints and disputes. Defendant's issuance of a series of TSBs directed to Vehicles' window regulator shows actual knowledge.

150.   Kia's conduct in refusing to perform the necessary repairs to Plaintiffs' and Class members' Vehicles constituted unfair conduct.

CLASS ACTION COMPLAINT

151.  Kia's practices offend public policy, are immoral, unethical, oppressive, and unscrupulous, cause substantial injury to consumers, and pose a risk to public safety.

152.  As a direct and proximate result of Kia's unfair and deceptive conduct, as alleged herein, Plaintiffs and the other Class members have suffered injury-in-fact, including the following:

      a.    Plaintiffs and the other Class members, in purchasing or leasing the Vehicles, received cars worth less than as represented in that they paid for a car with a power window system free of defects, but did not receive that which they paid for;

      b.    Plaintiffs and the other Class members suffered diminution in value of the Vehicles due to the existence of the Defect in their Vehicles; and

      c.    Plaintiffs and the other Class members were faced with the choice or repairing their Vehicles at substantial cost and inconvenience or being without their vehicles at substantial cost and inconvenience.

153.  As a result of Defendant's unfair and deceptive conduct, Plaintiffs and the other Class members have suffered actual damages, including power window systems, diminution in value of the Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

154.  Had Plaintiffs and the other Class members been aware of the omitted and misrepresented facts, i.e., that the Vehicles they purchased and leased were defective and would cost them several hundreds of dollars when the power window

systems failed, Plaintiffs and the other Class members would not have purchased and leased the Vehicles or would have paid significantly less for them than they actually paid.

155.   Plaintiffs and the Louisiana Class members seek all monetary relief allowed by law, including actual damages; treble damages for Kia's knowing violations of the Louisiana CPL; declaratory relief; attorneys' fees; and any other relief that is just and proper.

**COUNT V**

**Violations of South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. §§ 39-5-10,** *et seq.*
**(On Behalf of Plaintiff David Griesemer and the South Carolina Class)**

156.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

157.   South Carolina's Unfair Trade Practices Act ("SC UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20.

158.   Kia is a "person," as defined by S.C. Code Ann. § 39-5-10(a).

159.   Kia advertised, offered, or sold goods or services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of South Carolina, as defined by S.C. Code Ann. § 39-5-10(b).

160.   Kia's acts and practices had, and continue to have, the tendency or capacity to deceive.

161.   Kia's representations and omissions were material because they were likely to deceive reasonable consumers about the quality of the power window systems in a Vehicle, and defective nature of the automatic windows.

162.   A reasonable consumer would consider the quality of the power window systems in a Vehicle, and defective nature of the automatic windows to be important when making a decision whether to purchase or lease a Vehicle. The

disclosure of the defective power window systems would have influenced prospective buyers not to enter into transactions.

163. Kia intended to mislead Plaintiffs and South Carolina Class members and induce them to rely on its misrepresentations and omissions.

164. Plaintiff and South Carolina Subclass members seek all monetary and non-monetary relief allowed by law, including damages for their economic losses; treble damages; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed classes, pray for judgment as follows:

a) Certification of the classes under Federal Rule of Civil Procedure 23;

b) Appointment of Plaintiffs as representatives of classes and their counsel as class counsel;

c) Compensatory and other damages for economic and non-economic damages;

d) An award of restitution and/or disgorgement;

e) An injunction requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

f) Statutory pre-judgment and post-judgment interest on any amounts;

g) Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

h) Such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

- 42 -

Dated: August 18, 2022                    Respectfully submitted,


By: */s/ Robert R. Ahdoot*
     Robert Ahdoot (SBN 172098)
     rahdoot@ahdootwolfson.com
     Tina Wolfson (SBN 174806)
     twolfson@ahdootwolfson.com
     Theodore Maya (SBN 223242)
     tmaya@ahdootwolfson.com
     **AHDOOT & WOLFSON, PC**
     2600 W. Olive Avenue, Suite 500
     Burbank, California 91505
     Telephone: (310) 474-9111
     Facsimile:  (310) 474-8585

     Riley W. Prince (*pro hac vice* to be filed)
     rprince@barnowlaw.com
     **BARNOW AND ASSOCIATES, P.C.**
     205 W. Randolph Street, Suite 1630
     Chicago, IL  60606
     Telephone: (312) 621-2000


     *Counsel for Plaintiffs and the Proposed Class*

- 43 -
CLASS ACTION COMPLAINT